UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 5: 14-83-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 16-161-DCR |
| | ) | |
| ADRIAN WESLEY CAMPBELL, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Defendant Adrian Wesley Campbell's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  [Record No. 131] To the extent Campbell seeks re-sentencing, his motion will be granted.

**I.**

On August 27, 2014, a grand jury returned an indictment charging Campbell and others with one count of conspiring to distribute 50 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(l), 846, and three counts of using a communications facility in committing a felony in violation of 21 U.S.C. § 843(b).  [Record No. 1]  Campbell later pleaded guilty to count one (i.e.,conspiring to distribute 50 kilograms or more of marijuana).  [Record No. 64, 68]  Thereafter, Campbell was sentenced to a 190-month term of incarceration, followed by 6 years of supervised release.  [Record No. 89]  Campbell filed a direct appeal, which was dismissed by the Sixth Circuit because of the plea agreement's appellate-review waiver. [Record Nos. 91, 121]

On May 19, 2016, Campbell timely filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  [Record No. 131]  The motion alleges his improper classification as a career offender, ineffective assistance of trial counsel for failing to raise claims under *Johnson v. United States*, 135 S.Ct. 2551 (2015), and ineffective assistance of appellate counsel for failing to re-assert *Johnson* in a reply brief.  [Record No. 131]  In accordance with local practice, the motion was referred to United States Magistrate Judge Robert E. Wier for initial consideration.

While briefing proceeded on the defendant's § 2255 motion, Campbell filed multiple motions to supplement, alter, amend, or relate back under Fed. R. Civ. P. 15(c).  [Record Nos. 144, 146]  The first two motions, alleging that the federal statutes under which Campbell was indicted were unconstitutionally vague, were denied.  [Record No. 148]  Undeterred, Campbell sought reconsideration of the Rule 15(c) motions.  [Record No. 149]  Reconsideration was denied.  [Record No. 150]  Campbell then filed a third Rule 15(c) motion, this time based upon the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016).  [Record No. 151]

The third motion was addressed (and denied) in Magistrate Judge Wier's December 20, 2016, Recommended Disposition.  [Record No. 152]  Notwithstanding Campbell's mounting history of frivolous filings, the Recommended Disposition found merit in his claim of ineffective assistance of counsel during sentencing.  In light of the Magistrate Judge's Recommendation, the United States sought extensions to file objections, which were granted. [Record Nos. 154-56]  The matter is now ripe for review.

-2-

## II.

Campbell raises three arguments for relief, all bearing on the propriety of his sentence rather than on his underlying decision to plead guilty plea.[1]  The first two arguments are based on the Supreme Court's holding in *Johnson v. United States*, 135 S.Ct. 2551 (2015), which concerned the Armed Career Criminal Act.  Campbell first argues that *Johnson* is "beyond the scope" of the appellate-review waiver contained in his plea agreement.  [Record No. 131-1 at 2]  He does little to extrapolate, but this argument appears to lay a foundation for his second argument: his appellate counsel was ineffective for failure to re-assert *Johnson* in his reply brief.  [*Id.*]  Neither argument has merit because Campbell was not convicted under the Armed Career Criminal Act.[2]

---

[1]        [*See* Record No. 131-1 at 11 ("Requested Relief")]  As argued in his reply brief:

> Petitioner has not alleged that counsel Thompson did not explain the advantages and disadvantages of pleading guilty vs. going to trial; therefore, as stated by the government that Petitioner might have received a greater sentence had he gone to trial than Petitioner received on his guilty plea—should not be considered by this court as a persuasive position.

[Record No. 145 at 12]

[2]        Campbell was sentenced as a career offender under § 4B1.1 of the United States Sentencing Guidelines.  As an initial matter, his sentencing hearing took place on May 20, 2015, before *Johnson* was decided.  *See* Record No. 86; 135 S.Ct. 2551 (Decided June 26, 2015).  Therefore, *Johnson* could not have applied at the time of sentencing.  Second, Campbell was not sentenced under the residual clause of § 4B1.2.  Because the residual clause was the focus of intervening caselaw applying *Johnson* to sentences rendered under Sentencing Guidelines, that caselaw had no bearing on Campbell.  Finally, the Supreme Court's recent decision in *Beckles v. United States*, No. 15-8544, (U.S. Mar. 6, 2017), 2017 WL 855781, rebuffed *Johnson*-type vagueness challenges to the United States Sentencing Guidelines, and upheld § 4B1.2's residual clause.  Therefore, Campbell has no colorable claim for relief under *Johnson*, whether *via* an ineffective assistance of counsel claim or otherwise.

Campbell's third argument—ineffective assistance of counsel at sentencing—is the most substantive.  He alleges that counsel failed to provide a meaningful argument against application of the career offender guideline enhancement.  Specifically, Campbell claims that because Kentucky third-degree assault convictions, Kentucky Revised Statute ("KRS") § 508.025, may be the result of reckless conduct, his conviction cannot count as a predicate offense.  Upon review, the Court finds merit in Campbell's third argument, and agrees with the Magistrate Judge's Recommended Disposition. [3]   Accordingly, Campbell will be re-sentenced.

**a.**

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a party claiming ineffective assistance of counsel must prove both deficient performance and prejudice.  Specifically, a movant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Howard v. United States*, 743 F.3d 459, 463-64 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687).

With respect to counsel's performance, the "objective standard of reasonableness" is considered "in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009).  For example, "omitting meritless arguments" is not professionally unreasonable.

---

[3]   This Court must make a *de novo* determination of those portions of the Magistrate Judge's Recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C).  However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Objections were filed only regrading Campbell's third claim for relief.  Nevertheless, the Court has reviewed the record *de novo* with respect to all three arguments.  As outlined above, the Court finds that Campbell's first two arguments lack merit, and reserves further discussion.

*Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Further, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Hodges v. Colson*, 727 F.3d 517, 542 (6th Cir. 2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189, (2011)) (quotation marks omitted).

To meet *Strickland*'s second prong (i.e., prejudice), the defendant need only show a "reasonable probability" that the result would be different, which is "less than a preponderance of the evidence." *Howard*, 743 F.3d at 64 (quoting *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (quotation marks omitted)).  "[A] defendant need *not* show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* (emphasis added).

In the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001).  Therefore, to prevail on his claim, Campbell must show that counsel's performance fell below an objective standard of reasonableness, and that, but for that deficiency, there is a reasonable probability that he would have received a different sentence.  *See United States v. Jones*, 308 F. App'x 930, 932 (6th Cir. 2009) (articulating defendant's burden in the sentencing context); *United States v. DeGroat*, 102 F. App'x 956, 959-60 (6th Cir. 2004) (same); *Arredondo v. United States*, 178 F.3d 778, 783–84 (6th Cir. 1999) (discussing the application of *Strickland* to sentencing).

**b.**

Campbell's pertinent claim is as follows:

Here, in petitioner's case, under the KRS 508.025 assault third degree conviction, not all of the conduct proscribed by the statute qualifies as a crime of violence (reckless conduct), application of the categorical approach, today, in light of *Begay, Descamps,* and *Johnson*, precludes a finding that Petitioner has a prior conviction for a crime of violence.  Therefore, the Sentencing Guideline Manual Section 4B1.1 enhancement does not apply.

[Record No. 131-1 at 5]   Campbell claims that, "counsel's ignorance of [*Johnson*] incapacitated the District Court's findings that the modified categorical approach as well as the categorical approach applied to the KRS 580.025 conviction." [*Id.* at 9]  He goes on:

> [T]he prior plea agreement in the KRS 508.025 conviction never presented what mental state Petitioner entered a guilty plea for the [sic] KRS 508.025 conviction was not clear for the District Court to conclude that categorically the conviction was prototypical conduct suitable under §4B1.2 to sustain an enhanced sentence under §4B1.1.

[*Id.* at 10]  Despite conflating *Johnson* and *Descamps*,133 S.Ct. 2276 (2013), Campbell makes a colorable claim that his past conviction for third-degree assault should not qualify as a predicate offense for purposes of the career offender enhancement.

Campbell correctly argues that, under circuit precedent, *Descamps* and the categorical approach apply to the Sentencing Guidelines.  "Whether a conviction is a 'violent felony' under the ACCA is analyzed in the same way as whether a conviction is a 'crime of violence' under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.2(a)."  *United States v. McMurray*, 653 F.3d 367, 371 n.1 (6th Cir. 2011) (quoting *United States v. Gibbs,* 626 F.3d 344, 352 n. 6 (6th Cir. 2010)); *see also United States v. Covington*, 738 F.3d 759, 762 (6th Cir. 2014) (applying *Descamps* when determining whether a prior offense qualifies under U.S.S.G. § 4B1.2(a)); *United States v. Denson*, 728 F.3d 603, 612 (6th Cir. 2013) (same).

Campbell is also right to challenge Kentucky third-degree assault in light of *Begay v. United States*, 553 U.S. 137 (2008).  *Begay* established a "purposeful, violent, and aggressive" standard for "use of physical force" predicate offenses.  *Id.* at 148.  Kentucky third-degree assault may be committed through recklessness conduct, and under Kentucky law, reckless conduct is not purposeful conduct.  *See* KRS § 501.020 (definition of mental states).  Relying upon *Begay,* the Sixth Circuit in *United States v. McMurray* held that "the 'use of physical

force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct." 653 F.3d 367, 375 (6th Cir. 2011) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9–11 (2004). *Jones v. United States*, reaffirmed *McMurray*, holding that "[w]hen a crime requires only the mens rea of recklessness, it cannot qualify under the 'use of physical force' subsection of the ACCA." 689 F.3d 621, 626 (6th Cir. 2012).

In 2013, Campbell pleaded guilty to Kentucky third-degree assault under KRS § 580.025.  Under the statute, a person may commit assault either "[r]ecklessly, with a deadly weapon or dangerous instrument" or "intentionally."[4]  Therefore, this conviction required scrutiny to ensure it could be counted as use of force predicate, despite the inclusion of reckless conduct.  The requisite scrutiny was not applied.

**c.**

Campbell's Presentence Investigation Report ("PSR") recommended that he be classified as a career offender on the basis of his previous convictions for a controlled substance offense and for the Kentucky third-degree-assault conviction.  [Record No. 93] Defense counsel formally objected to the PSR, on the sole basis that Campbell's third degree assault conviction should not count for career offender purposes.  [Record No. 79] Unfortunately, counsel's argument was not grounded in caselaw.

Counsel's objection focused on § 4B1.2(a)(2)'s residual clause, which covers offenses that "otherwise involve[] conduct that presents a serious potential risk of physical injury to

---

[4] (1) A person is guilty of assault in the third degree when the actor:
　　(a) Recklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause physical injury to:
　　　　1. A state, county, city, or federal peace officer.
KRS § 580.025.  Subsection (1)(b) of the statute relates to institutionalized persons.

another." [Record No. 79 at 2; Record No. 93 at 20]  Counsel argued that "K.R.S. 508.025 simply requires an assault, any assault no matter how slight." [Record No. 93 at 21]  He suggested that if the assault had not been on a peace officer, it would only be a fourth degree assault, and the United States would not be seeking career offender status.  [*Id.*]  Counsel then discussed Campbell's actions leading to the assault charge, or as counsel put it, Campbell's "actual behavior." [*Id.*]  The defendant "elbowed [a police] officer in the chin in an attempt to free himself from [the officer's] grasp." [*Id.*]  However, according to counsel, the officer "was never at risk for 'serious potential physical injury.'" [*Id.*]  Counsel noted that no weapon was used, and that there was no basis to support the allegation that the elbowing "almost caused the officer to lose consciousness." [*Id.*]  Counsel claimed that the officer was in "fine shape to chase Mr. Campbell and even strike him [after the elbowing]." [*Id.*]  In conclusion, counsel argued that "K.R.S. 508.025 simply does not fit the requirements of U.S.S.G. 4B1.2" because, "[u]nder Kentucky law assault third does not require a serious risk of physical injury; it only requires an injury; no matter how slight." [*Id.*]

In response to the objection, the Probation Office argued that the statute "meets the 'black-letter' requirements of USSG § 4B1.2(a)(1)" because "[r]ecklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause physical injury to a peace officer" is "consistent with USSG §4B1.2(a)(1)'s requirement that the offense include the 'use' or 'attempted use' of physical force against another person." [Record No. 93 at 24]  For support, the Probation Office cited *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012), which upheld a challenge to an Ohio assault statute.  Probation argued that because "the language found in KRS 508.025 is analogous to that of [the Ohio statute], it is [] a crime of violence, pursuant to the holding in *U.S. v. Evans*."

At the time of sentencing, counsel reiterated the same underlying-conduct-based objection. [Record No. 114 at 4-5]  Counsel stated that, "[i]t's our position that it's beyond the pale to have this kind of enhancement for really something this minor, which is creating this draconian result." [*Id.* at 5]  The United States argued in response that the conviction should count, because "assault in the third degree has a specific element with respect to the use or attempted use of physical force against another person[.]" [*Id.*]  The government also argued that *United States v. Evans* supports the position that Kentucky third-degree assault qualifies as a use-of-force predicate. [*Id.*]

Following the parties' arguments, the Court proceeded to apply the categorical and modified categorical approach analysis. [Record No. 114 at 6-11]  The Court found that the third-degree assault conviction qualifies as a predicate offense because "[i]t does have as an element the use or attempted use or threatened use of physical force. [*Id.* at 8]  Without the benefit of counsel's argument, the court did not consider the prohibition on reckless conduct. Defense counsel made no further objection to the Court's findings. [Record No. 114 at 42] Counsel never objected to the Court's application of the categorical or modified-categorical approach, and never argued that reckless conduct was not a "use" of force.

### III.

At no point prior to or during the sentencing hearing did counsel raise the specter that reckless conduct *cannot* count as a use-of-force predicate.  This is despite clear Sixth Circuit caselaw so holding.  Neither did counsel contravene that the case offered by the United States and the Probation Office did not support their position.  If anything, that case supported Campbell's position that his third-degree assault conviction should *not* count.  In *United States v. Evans*, the Sixth Circuit held that the Ohio assault statute at issue qualified as a use-of-force

-9-

predicate because it required "knowing" conduct and, therefore, was not subject to *McMurray*'s prohibition on "reckless" conduct. Contrary to the Probation Office's suggestion, the Kentucky statute and the Ohio statute are critically different—the Ohio statute requires purposeful conduct, while the Kentucky statute requires only reckless conduct. *Evans* expressly addressed *McMurray*'s holding that reckless conduct does not suffice.

Neither did counsel address *Descamps v. United States*, 133 S.Ct. 2276 (2013), which made clear that the elements of the offense are to be considered, rather than the facts of what occurred. When applying the modified categorical approach, *Descamps* decried consideration of the factual basis for a defendant's conviction and the particular acts the defendant committed. *Id.* at 2286. The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. *Id.* at 2285. Counsel's arguments centered on the type of factual-scrutiny that *Descamps* expressly prohibits.

### a.

The United States asserts that Campbell has not met his burden of showing that counsel was so ineffective that he was not acting as counsel for purposes of the Sixth Amendment. [Record No. 157 at 3] The government contends that counsel's actions at sentencing comported with the prevailing professional norms at the time. [*Id.* at 5] In support, the United States makes two arguments. First, the government argues that existing caselaw within the district foreclosed the argument that Kentucky third-degree assault, KRS § 580.025, was not a crime of violence for purposes of the career offender enhancement. [*Id.* at 6] Second, the government argues that qualifications for the career offender enhancement are "not succinct and straightforward" and that counsel cannot be expected to predict future developments in the caselaw. [*Id.* at 9-10]

-10-

Regarding prejudice, the government concedes that counsel did not make specific arguments regrading whether the relevant statute was divisible.  [*Id.* at 11]    However, it contends that, because the Court did consider the modified categorical approach, an argument by counsel is not reasonably likely to have made a difference.  [*Id.* at 11-12]

**b.**

The government is correct that ineffectiveness claims normally will not lie on the basis of the failure to present an argument foreclosed by existing caselaw.  *See Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) ("Only in a rare case will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law."); *see also Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999) (failure to anticipate a change in the law does not constitute ineffective assistance).  However, there was no binding precedent holding that Kentucky third-degree assault, KRS § 580.025, was a crime of violence.[5]  Moreover, despite alleged practice believing

---

[5]     The government claims that the "prevailing position" in the United States District Courts for both the Eastern and Western Districts of Kentucky, both at the time Campbell was sentenced, and until the Magistrate Judge's Recommended Disposition was issued, was that Kentucky third-degree assault convictions are categorically crimes of violence.  However, at the time of Campbell's sentencing, only one opinion had reached that conclusion, and that opinion did not consider the import of *Descamps* or *McMurray*.  In *United States v. Guevara-Barcenas*, No. 5:12-CR-36-KKC, 2014 WL 5685571 (E.D. Ky. Nov. 4, 2014), the Court wholly adopted a Magistrate Judge's Report and Recommendation, without review, after the defendant filed no objections.  The defendant's § 2255 petition was filed shortly after *Descamps* was decided, and did not raise *Descamps* as a grounds for relief.  Two later cases cited *Guevara-Barcenas* for the proposition that KRS § 580.025 is categorically a use-of-force offense.  Again, however, neither opinion considered *Descamps*. *See United States v. Laporte*, No. 5:11-CR-00025-TBR, 2016 WL 797596, (W.D. Ky. Feb. 29, 2016) (appeal docketed); *United States v. Mullins*, No. 2:11-CR-69-DCR, 2016 WL 3849816, (E.D. Ky. July 11, 2016).

There is no basis for asserting (nor does the government attempt to assert) that Campbell's counsel was aware of *Guevara-Barcenas*, or that he relied upon it.  Even if he had done so, it does not mean his reliance would be reasonable.  Analysis of the opinion would

that it did, counsel nonetheless argued that Campbell's conviction should not count. The suggestion that counsel was merely following existing practices by failing to object is unavailing, because he objected, he just did so poorly. Counsel was not ineffective because he failed to make an argument that was foreclosed by existing caselaw.[6] Counsel was ineffective because the argument he made was foreclosed, and he failed to make an argument that was available.

This case has many layers. The key argument that defense counsel did not make is that reckless conduct cannot serve as the basis for the use of force predicate. In 2015, an argument against recklessness was on sure footing.[7] Had defense counsel make this argument, it is at

---

reveal omission of *Descamps*. Perhaps the government's point is that counsel's actions could not have failed to comport with prevailing professional norms when counsel's omission was mirrored by one court preceding him and two courts thereafter (though they were all *pro se* habeas proceedings). In truth, the bench and bar have a shared responsibility to apply prevailing caselaw as it develops—no matter how esoteric (*See, e.g, Mathis v. United States*, 136 S.Ct. 2243, 2268 (2016) (Alito, J., dissenting) ("I wish them good luck."))—and defendants should not be expected to bear the prejudice of failures to do so.

[6]     Frivolous arguments are not required by the Sixth Amendment, and are generally frowned upon by the Court. *Cf. Smith v. Robbins*, 528 U.S. 259, 272 (2000) (the right to appellate representation does not include a right to present frivolous arguments to the court).

[7]     *See McMurray*, 653 F.3d 367 (6th Cir. 2011) (holding that reckless conduct cannot count); *Jones*, 689 F.3d 621, 626 (6th Cir. 2012) (same). A recent Supreme Court case, however, has reopened the question of whether reckless conduct may count as a use of force. *Voisine v. United States*, 136 S.Ct. 2272 (2016) (holding that reckless domestic assault qualifies as a "misdemeanor crime of domestic violence" under § 922(g)(9)). A circuit split is now developing on the import of *Voisine* for other statutes including reckless conduct. [*See* Record No. 152 at 18 n.14 (listing cases)] For example, the Fifth and Eighth Circuits have now held that reckless conduct constitutes a "use" of force for purposes of ACCA and U.S.S.G. §4B1.2. *United States v. Howell*, 838 F.3d 489, 501 (5th Cir. 2016); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016). The Sixth Circuit has yet to decide this issue, but courts in this circuit have begun applying a *Voisine*-based analysis. *See, e.g., United States v. Wehunt*, No. 1:16-CR-17-1, 2017 WL 347544 (E.D. Tenn. Jan. 24, 2017) (holding that Tennessee Reckless Aggravated Assault does not count as a use-of-force predicate, in light of *McMurray* and despite *Voisine*).

least reasonably likely that the Campbell would not have been classified as a career offender. However, that would depend upon application of the modified categorical approach, and reference to *Shepard* documents.  At the time of sentencing, the law was still in flux regarding whether application of the modified categorical approach was appropriate for a statute listing alternate *means* rather than elements, as KRS § 508.025 apparently does.  Before *Mathis*, no caselaw prevented the Court from parsing a statute with alternative "means" of committing an offense to determine by which means the defendant was charged with committing it.[8] *Descamps*, while dispensing with a real-world-conduct type approach used in *Guevara-Barcenas*, 2014 WL 5685571 at *7, reaffirmed the reference to extra-statutory materials commonly called "*Shepard* documents."  *Descamps*, 133 S.Ct. at 2284 (citing *Shepard v. United States*, 544 U.S. 13 (2005)).  The police affidavit stating that Campbell elbowed an officer in the face is not a permissible *Shepard* document, and so is irrelevant for purposes of the modified categorical approach.[9]  Campbell's indictment, however, is a permissible *Shepard* document.  133 S.Ct. at 2287.  Unfortunately, the indictment is ambiguous and does not charge a specific *mens rea*.  The indictment, to which Campbell pleaded guilty, alleges as count 1:

---

[8]    On August 5, 2015, the Sixth Circuit blessed the use of "means" in *United States v. Ozier*, 796 F.3d 597, 602 (6th Cir. 2015) ("Moreover, and equally as important, *Descamps* expressly rejected defendant's finite parsing of state law as to the difference between "means" and "elements" in responding to a similar argument set forth by Justice Alito in dissent.") *Ozier* added to the circuit split which the Supreme Court later resolved in *Mathis*. 136 S.Ct. at 2251 n.1 (identifying circuit split). "This case concerns a different kind of alternatively phrased law . . . one that enumerates various factual means of committing a single element."  *Mathis* 136 S.Ct. at 2249.

[9]    The use of police reports for this purpose was specifically barred in of *Shepard v. United States*, 544 U.S. 13 (2005).  As was mentioned at sentencing, however the report may be considered under 18 U.S.C. § 3553.  [Record No. 14 at 9]

> On or about the 15th day of September, 2005, in Woodford County, Kentucky, the above named Defendant committed the offense of Assault Third Degree when he *unlawfully* caused or attempted to cause physical injury to [an officer] of the Versailles Police Department[.]

[Record No. 93 at 29 (emphasis added)]   Had the indictment read "intentionally," this conviction would unambiguously count under the modified categorical approach. [10]

Campbell's guidelines range with the career offender enhancement was 188-235 months (Offense Level 31 at Criminal History Category VI).   [Record No. 92 at 1]   Without the enhancement, Campbell's Offense Level, post-acceptance of responsibility credit, would be 15, leading to a guidelines range of 41-51 months.[11]   [Record No. 93 at 7; U.S.S.G. Chpt. 5 pt. A]   This results in a delta of at least 137 months, which is constitutionally significant.   *See Glover v. United States*, 531 U.S. 198, 203 (2001) ("any amount of actual jail time has Sixth Amendment significance.").

To be sure, defendants are "not entitled to the most canny lawyer available, only an adequate one." *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992) (en banc).   Having failed to address application of the modified categorical approach in light of recklessness, which is reasonably likely to have made a difference, Campbell's counsel was not adequate.

---

[10]   That is, until *Mathis* came along. As the Magistrate Judge outlines in detail, *Mathis* does not permit application of the modified categorical approach (reference to *Shepard* documents) where the statute contains alternate *means* of committing the crime instead of alternative *elements*.  Based on the Magistrate Judge's thorough study of state law, it appears that recklessly (with a weapon) and intentionally are alternate means by which one can be guilty of the § 580.025(1)(a) crime.  [Record No. 152 at 21-31]  Therefore, if reckless conduct cannot count as a use-of-force predicate, it appears that Kentucky third-degree assault is now categorically barred from being a predicate offense.

[11] Campbell and the Recommended Disposition erroneously suggest that his guidelines range would have been 30-37 month.

**c.**

Having conducted the layered analysis, it is worth circling back to consider the government's arguments against finding ineffectiveness.  The government argues that the "prevailing professional norm" at the time of Campbell's sentencing is that KRS § 508.025 "was categorically a crime of violence."  [Record No. 157 at 5]  The government points to three district court opinions which so held, and the absence of any authority holding in the alternative.  [*Id.*]  The reality is that counsel made no attempt to apply existing caselaw to determine whether the statute at issue could count as a crime of violence.  As the government points out, the task is certainly difficult, perhaps even tedious, but the task is "by now a common" one.  *See United States v. Rede-Mendez*, 680 F.3d 552, 555 (6th Cir. 2012) ("This case again requires us to determine whether a particular criminal offense triggers an enhanced sentence by qualifying as a crime of violence, by now a common but no less difficult task."); *but see Mathis*, 136 S.Ct. at 2252, 2269 (describing the threshold task as "easy," and the elements-based approach as a "mantra").  If common, counsel cannot be excused for omitting it.  But the government believes that the toughness is enough, that because others have struggled with it, counsel here was not constitutionally deficient.

The United States invokes *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010), for the proposition that a private practitioner's duty may be limited "when the law is not succinct and straightforward.  The government argues that "[t]here is nothing succinct and straightforward regarding the qualification of various state crimes as crimes of violence as [sic] career offenders or armed career criminals."  [Record No. 157 at 9]  Fair enough.  But that admonition is hardly on point.

-15-

*Padilla* dealt with immigration consequences (deportation) resulting from entry of a guilty plea.  Recognizing that immigration law can be complex, the *Padilla* Court held that criminal defense counsel cannot be expected to give authoritative advice when the law is not clear.  559 U.S. at 369.  However, "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear."  *Id.*  Defense counsel in *Padilla* was found to be ineffective for failing to advise the defendant that deportation would be mandated by a guilty plea.  "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute[.]"  559 U.S. at 368.  The modified-categorical-approach caselaw is likely not as clear as the statute in *Padilla*.  However, had counsel simply read the case cited by the government–*Evans*–and considered its relation to KRS § 580.025, counsel would have recognized the key issue—recklessness.

Taken to its logical conclusion, the government's argument is that a criminal defendant should have to bear a potential 12-year sentencing enhancement because sentencing caselaw is *hard*.  Expecting criminal defense counsel to apply existing *sentencing* precedent at *sentencing* (no matter how hard or convoluted it may be) is not too much to ask, regardless of whether the potential difference is days, months, or years.  If attempting an analysis under existing caselaw is outside prevailing norms, then the norms must be seriously questioned.

It also doubtful that failure to apply binding precedent is what the Supreme Court had in mind when discussing "prevailing professional norms."  Here, the issue is not poor application of precedent, but *non*-application of precedent.  Counsel was playing under old rules.  The Sixth Amendment does not demand expert gamesmanship, but when the game turns to chess, counsel may not carry-on with checkers.

Counsel may be excused for failing to master the intricacies of the modified categorical approach. The rules of the game are ever in need of clarification, to the end of what may be described as "pointless formalism." *Mathis*, 136 S.Ct. at 2271 (2016) (Alito, J., dissenting). But here, counsel made no effort to apply the framework and parse the elements of the prior offense. Instead, he argued about the facts of the underlying conduct—for better or worse, a foreclosed approach.

For better or worse, because one may question the wisdom of this chess game. Campbell may avoid career offender status because his statute of conviction included "reckless" conduct, although his actual conduct was anything but recklessness: elbowing a police officer in the face to avoid arrest. If there is such a thing as getting off on a "technicality," this is it. But this technicality is the child of a long line of precedent which this Court is obligated to follow.

## IV.

Counsel's lone argument against a career offender enhancement was a fact-based argument foreclosed by caselaw. Because counsel failed to make a meaningful argument rooted in existing caselaw, his conduct fell below prevailing professional norms. Had counsel done otherwise, it is at least reasonably likely that Campbell would have received a reduced sentence. Therefore, Campbell's burden under *Strickland* is met, and the government's objections are overruled.[12]

---

[12]    At re-sentencing the parties will have to consider what impact, if any, *Voisine* has on Kentucky's third-degree assault statute, any *ex post facto* concerns with its application, and whether the statute is otherwise divisible.

It is clear from the indictment that the defendant was charged under KRS § 580.025(1)(a), rather than KRS § 580.025(1)(b). Subsection (1)(b) relates to institutionalized

Based on the foregoing, it is hereby

**ORDERED** as follows:

1.       The United States Magistrate Judge's Recommended Disposition [Record No. 152] is **ADOPTED** and **INCORPORATED** by reference.

2.       Defendant/Movant Adrian Wesley Campbell's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, [Record No. 131] is **GRANTED** to the extent that he seeks re-sentencing.  The motion is **DENIED** in all other respects.

3.       The Defendant/Movant's motion requesting consideration of certain evidence in the re-sentencing hearing [Record No. 158] is **DENIED**, without prejudice.  Any evidence appropriate for consideration may be submitted upon appointment of new counsel.

4.       The United States Probation Office is directed to prepare an addendum to Campbell's Presentence Report which includes a recalculation of the guidelines range consistent with this Memorandum Opinion and Order.

5.       A hearing shall be scheduled in this matter on **Friday, May 26, 2017**, beginning at the hour of **1:00 p.m.**, at the United States Courthouse in **Lexington, Kentucky**.  This hearing shall be conducted for the purpose of re-sentencing the defendant and advising the defendant/petitioner of his appellate rights.

---

persons, and likely falls outside the requisite serious-bodily-injury requirement.  But before the Court may look at the indictment to reach this conclusion, *Mathis* required the Court to find that subsections (1)(a) and (1)(b) are separate elements, rather than means.  The Magistrate Judge's opinion notes that some Kentucky assault statutes delineate mental states in various subsections, despite those subsections being treated as alternative means (or, at least, permitting the jury to not be unanimous as to a single one).  [Record No. 152 at 21-31]  That observation does not control the distinction here between (1)(a) and (1)(b).  KRS § 580.025 lists various mental states that apply only to subsection (1)(a).  Subsection (1)(b) appears to constitute a "separate crime" for purposes of *Mathis*.

6.     Having previously determined that the defendant qualifies for court-appointed counsel under the provisions of the Criminal Justice Act, the Clerk of the Court is directed to select new counsel by random draw to represent the defendant for the purposes of re-sentencing.  Notification of this appointment shall be provided forthwith by the Clerk of the Court.

7.     The United States Marshals service shall transport the Defendant Adrian Wesley Campbell, who is in federal custody and who is currently incarcerated at the Federal Correctional Institution in Welch, West Virginia, to the United States District Court in Lexington, Kentucky, to attend his re-sentencing hearing, scheduled for **May 26, 2017**, beginning at the hour of **1:00 p.m**.  The Defendant should be returned to the district at least one week prior to the sentencing hearing for the purpose of meeting and conferring with counsel in preparation for the sentencing hearing.

This 30th day of March, 2017.



Signed By:

*__Danny C. Reeves__*   DCR

**United States District Judge**